UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN BASIL PAUL PERRONE,           :
    Plaintiff,                 :
                               :
v.                                 :          CASE NO. 3:17-cv-125(RNC)
                               :
ANDREW SAUL,                       :
COMMISSIONER OF SOCIAL             :
SECURITY,                          :
    Defendant.                 :
                               :
                               :

**<u>RULING AND ORDER</u>**

Plaintiff brings this action against the Commissioner of
Social Security pursuant to 42 U.S.C. § 405(g), challenging the
denial of his application for Title II disability insurance
benefits ("DIB").  The Administrative Law Judge ("ALJ")
determined that plaintiff was not disabled at the pertinent time,
although he did have several severe impairments.  Plaintiff moves
for an order reversing the decision and remanding for payment of
benefits or further proceedings in accordance with the fourth
sentence of 42 U.S.C. § 405(g).  The Commissioner moves for an
order affirming the denial of benefits.  I conclude that a remand
is necessary to ensure that proper consideration is given to the
opinions of plaintiff's treating physicians.  Accordingly,
plaintiff's motion to reverse is granted in part and the
Commissioner's motion to affirm is denied.[1]

---

[1] I reach this conclusion with some reluctance because the ALJ's
opinion is generally well-supported and discusses at length the

**1**

## I. Background

I assume the parties' familiarity with the facts and procedural history of this case and therefore provide only a brief summary. Plaintiff applied to the Social Security Administration ("SSA") for DIB in 2006 and 2010. His deemed onset date is July 1, 1999. He met the insured status requirements of the Social Security Act ("the Act") through March 31, 2005, his "date last insured." Accordingly, to receive DIB, plaintiff must establish that he had a disability on or before March 31, 2005.[2]

---

treatment records from before, during, and immediately after the period at issue. Moreover, plaintiff has not provided strong support for his claim of disability prior to his date last insured and his claim has already been the subject of lengthy administrative proceedings. Under the law, however, I believe a remand is required.

[2] "To be eligible for disability insurance benefits, an applicant must be 'insured for disability insurance benefits.'" Arnone v. Bowen, 882 F.2d 34, 37 (2d Cir. 1989) (quoting 42 U.S.C. § 423(a)(1)(A), (c)(1)) (citing 20 C.F.R. § 404.130, .315(a) (1988)). Specifically, "the claimant must demonstrate that [he] was disabled on the date [he] was last insured for benefits." Swainbank v. Astrue, 356 F. App'x 545, 547 (2d Cir. 2009) (citation omitted). Where, as here, a claimant does not apply for benefits before his date last insured, he "may still obtain benefits if [he] has been under a continuous period of disability that began when [he] was eligible to receive benefits." King v. Colvin, No. 14-CV-829S, 2016 WL 1165309, at *3 (W.D.N.Y. Mar. 25, 2016) (alterations in original) (quoting Hartfiel v. Apfel, 192 F. Supp. 2d 41, 42 n.1 (W.D.N.Y. 2001)). "Nonetheless, no matter how disabled a claimant is at the time of his application or hearing, he is only entitled to the benefits of the Act if he is able to prove disability existed prior to his date last insured." Id. (citation omitted). "[W]hen a claimant does not show that a currently existing condition rendered [him] disabled prior to [his] date last insured, benefits must be denied." Mauro v. Berryhill, 270 F. Supp. 3d 754, 762 (S.D.N.Y. 2017) (collecting

Plaintiff has had problems with his back since at least 1990, when he was in a car accident. He also has a history of Lyme disease that dates to at least 2004. The existing record does not contain all his medical records prior to his date last insured. There are records from 1990 and 1993, followed by a gap until 2004. The record is comparatively voluminous after plaintiff's date last insured.[3]

The SSA denied plaintiff's application initially and on reconsideration. On September 23, 2011, he appeared with counsel for a hearing before an ALJ and testified extensively. On June 1, 2012, he and his counsel appeared before the ALJ for a supplemental hearing. They were accompanied by plaintiff's father, who appeared as a witness. On July 27, 2012, the ALJ

---

cases); see Monette v. Astrue, 269 F. App'x 109, 111 (2d Cir. 2008) ("[The claimant] would be eligible to receive disability insurance benefits if, but only if, he can demonstrate disability . . . before [his date last insured]."). The primary dispute in this case is whether plaintiff's impairments were disabling as of his date last insured such that he qualifies for DIB.

[3] In some cases, "evidence of an applicant's condition subsequent to his date last insured may be pertinent to his condition prior to that date." O'Connell v. Colvin, 558 F. App'x 63, 64 (2d Cir. 2014); see also Lisa v. Sec'y of Dep't of Health & Human Servs., 940 F.2d 40, 44 (2d Cir. 1991) (noting that later evidence is relevant "in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date" (citation omitted)). On the other hand, a claimant's "reliance on evidence demonstrating a worsening of [his] condition after" the relevant period "is of little value, because [the claimant is] required to demonstrate that [he] was disabled as of" the date last insured. Vilardi v. Astrue, 447 F. App'x 271, 272 (2d Cir. 2012).

issued a decision finding that the 2010 application was barred by res judicata. The Appeals Council disagreed and remanded the case for further proceedings. On May 1, 2014 and January 16, 2015, plaintiff again appeared with counsel at hearings before the ALJ. A medical expert testified at the January 2015 hearing.

On May 27, 2015, the ALJ issued the decision that is the subject of this appeal. The ALJ concluded that plaintiff was not disabled as of his date last insured and thus not eligible for DIB. The Appeals Council denied plaintiff's request for review on November 29, 2016. This appeal followed.

## II. Legal Standard

"A district court reviewing a final . . . decision [of the Commissioner] pursuant to . . . 42 U.S.C. § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). Accordingly, the Court may not make a de novo determination of whether a plaintiff is disabled. See id.; Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court's function is to ascertain (1) whether the Commissioner applied the correct legal principles and (2) whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). If the Commissioner's decision is supported

4

by substantial evidence, it will be sustained, even if there may also be substantial evidence to support the plaintiff's position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which means "more than a mere scintilla or a touch of proof here and there in the record." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

## III. Discussion

The Act establishes that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). I assume the parties' familiarity with the five steps of a disability determination. 20 C.F.R. § 404.1520(a)(4)(i)-(v); e.g., DeMico v. Berryhill, No. 3:17CV00805(SALM), 2018 WL 2254544, at *3-4 (D. Conn. May 17, 2018) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)).[4]

The ALJ found that during the relevant time period, plaintiff had three severe impairments: spondylosis of the lumbar spine with possible pars defect, degenerative disc disease of the lumbar spine, and a history of Lyme disease. Nevertheless, the

---

[4] The claimant bears the burden of proof at the first four steps, while the burden shifts to the Commissioner at the last step. McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (citations omitted).

ALJ found that as of March 31, 2005, plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). Consulting the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, the ALJ found that based on plaintiff's RFC, age, education, and work experience, a finding of "not disabled" was directed by Medical-Vocational Rule 202.20.

On appeal, plaintiff argues that the ALJ erred in three ways. He asserts that the ALJ erred at the RFC-determination phase by (1) determining that plaintiff could perform the full range of light work, despite contrary opinions from treating physicians, and (2) relying on a medical expert whose testimony plaintiff faults as internally contradictory, biased, and based on an incomplete review of the record. In addition, he argues that the ALJ erred by (3) failing to obtain vocational expert testimony despite the presence of significant non-exertional limitations.

Plaintiff's first two arguments have merit. I agree with him that in the context of this case, the opinions of his treating physicians, particularly that of his primary care doctor, Dr. Rabindranath Mahabir, require fuller consideration. I also agree with his argument that the ALJ gave too much weight to the testimony of the medical expert. Under Second Circuit law, a remand is necessary in accordance with the treating

physician rule and the Commissioner's duty to develop the
record.[5]

A.  The Treating Physician Rule

Under the treating physician rule, "the opinion of a
claimant's treating physician as to the nature and severity of
the impairment is given controlling weight so long as it is well-
supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with the other
substantial evidence in the case record."  Greek v. Colvin, 802
F.3d 370, 375 (2d Cir. 2015) (citation, internal quotation marks,
and brackets omitted).  The treating physician rule "generally
requires a measure of deference to the medical opinion of a
claimant's treating physician."  Halloran v. Barnhart, 362 F.3d
28, 32 (2d Cir. 2004) (per curiam).

Still, the treating physician's opinion must be consistent
with other substantial evidence to be given controlling weight.
Such "other substantial evidence" can include "the opinions of
other medical experts."  Greek, 802 F.3d at 375 (quoting
Halloran, 362 F.3d at 32).  Thus, it is possible for other

_____

[5] Plaintiff also alleges that the ALJ should have obtained
vocational expert testimony because he has significant non-
exertional limitations.  "In light of [the] finding [that the ALJ
failed to adequately develop the record], the Court need not
reach the merits of plaintiff's remaining arguments."  DeMico,
2018 WL 2254544, at *10.  On remand, after further development of
the record, it will be up to the ALJ to decide in the first
instance whether vocational expert testimony should be obtained.
Id.

doctors' contrasting opinions to limit the weight assigned to a treating physician's opinion.

However, if the treating physician's opinion is not given controlling weight, the ALJ must consider certain factors to determine the appropriate weight to give the opinion.[6] Id. (citing 20 C.F.R. § 404.1527(c)).  Moreover, whatever weight is assigned to a treating physician's opinion, the ALJ must "always give good reasons" for that weight.  20 C.F.R. § 404.1527(c)(2) (2015); e.g., Smith v. Berryhill, 740 F. App'x 721, 724 (2d Cir. 2018) ("An ALJ must provide 'good reasons' for affording limited weight to the treating source's opinion and more weight to a non-treating source." (citations omitted)).  In other words, if the treating physician's opinion is to be disregarded, the ALJ must explain why.  Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) ("[A]dministrative decisionmakers . . . [have an] obligation, under Schaal and § 404.1527(d)(2), to explain why a treating physician's opinions are not being credited." (citing Schaal v. Apfel, 134 F.3d 496 (2d Cir. 1998))).  Courts "do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given" to a treating physician's view, and remand is

---

[6] These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, evidence in support of the medical opinion, consistency with the record as a whole, specialty in the medical field, and any other relevant factors.  20 C.F.R. § 404.1527(c).

appropriate when the ALJ's opinion "do[es] not <u>comprehensively</u> set forth reasons for the weight assigned to a treating physician's opinion." <u>Halloran</u>, 362 F.3d at 33 (emphasis added).

The treating physician rule thus imposes a strict duty on the ALJ to analyze the opinions of treating physicians. "[T]he fact that there may have been reasons to discount the treating physicians' opinions does not relieve the ALJ of [her] obligation to discuss the opinions and assign them weight." <u>Budnick v. Comm'r of Soc. Sec.</u>, No. 3:17-CV-01546(SALM), 2018 WL 4253172, at *7 (D. Conn. Sept. 6, 2018) (citing <u>Snell</u>, 177 F.3d at 134); <u>see also</u> <u>Perez v. Astrue</u>, No. 07–CV–958 (DLJ), 2009 WL 2496585, at *8 (E.D.N.Y. Aug. 14, 2009) ("Even if [the treating physician's] opinions do not merit controlling weight, the ALJ must explain what weight she gave those opinions and must articulate good reasons for not crediting the opinions of a claimant's treating physician.").

B.   <u>The Duty to Develop the Record</u>

The ALJ also has a duty to develop and fill gaps in the record. <u>See</u> 20 C.F.R. § 404.1545(a)(3). The ALJ has the "affirmative obligation to develop the administrative record . . . even when the claimant is represented by counsel." <u>Rogers v. Astrue</u>, 895 F. Supp. 2d 541, 549-50 (S.D.N.Y. 2012) (quoting <u>Perez v. Chater</u>, 77 F.3d 41, 47 (2d Cir. 1996)) (citing <u>Butts v. Barnhart</u>, 388 F.3d 377, 386 (2d Cir. 2004); <u>Blanda v. Astrue</u>, No.

05-CV-5723, 2008 WL 2371419, at *7 (E.D.N.Y. June 9, 2008)); see also Martinez v. Massanari, 242 F. Supp. 2d 372, 378 (S.D.N.Y. 2003) (citations omitted).[7]  Second Circuit law "places the burden on the ALJ, not the claimant, to develop the administrative record." DeMico, 2018 WL 2254544, at *7 (emphasis in original) (citing Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999)).

Accordingly, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." Rosa, 168 F.3d at 79 (citing Schaal, 134 F.3d at 505; Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y.

_____

[7] Several cases discussing the duty to develop the record, including Rogers, Blanda, and Martinez, cite 20 C.F.R. § 404.1512(e).  At the time of those decisions, § 404.1512(e) required the Commissioner to "seek additional evidence or clarification from the claimant's treating sources when their reports contain a conflict or ambiguity that must be resolved or their reports are inadequate for the Commissioner to determine whether claimant is disabled." Blanda, 2008 WL 2371419, at *7 (internal quotation marks and brackets omitted).  However, "[t]he Court applies the Regulations in effect at the time of the ALJ's decision." Graham v. Comm'r of Soc. Sec., No. 16-CV-142 (LDH), 2017 WL 1232493, at *3 n.2 (E.D.N.Y Mar. 31, 2017) (citation omitted).  At the time of the ALJ's decision in this case, 20 C.F.R. § 404.1512 no longer referenced "conflict or ambiguity." See 80 Fed. Reg. 14836, 14836 (Mar. 20, 2015) (modifying 20 C.F.R. § 404.1512).  However, Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999), which also discusses the duty to develop the record, did not cite 20 C.F.R. § 404.1512(e).  Moreover, recent decisions have continued to follow the reasoning in Rogers and Martinez despite reviewing ALJ decisions issued under the same version of the regulations at issue here. E.g., Emerick v. Berryhill, No. 3:17-CV-00658 (JAM), 2018 WL 4300118, at *3 (D. Conn. Sept. 10, 2018); DeMico, 2018 WL 2254544, at *1. Accordingly, the ALJ remains under an obligation to develop the record.

1998)).  An ALJ's duty to develop the record may require her to seek clarifying information from a physician whose notes are in the record or to attempt to obtain records from other physicians identified by the claimant.  See Rosa, 168 F.3d at 80, 83; Rogers, 895 F. Supp. 2d at 550-51; Molt v. Comm'r of Soc. Sec., No. 05-CV-418, 2009 WL 5214920, at *6 (N.D.N.Y. Dec. 28, 2009) (finding that the ALJ erred in not "re-contact[ing]" treating sources to "supply opinions").  When gaps in the record leave the accuracy and fairness of the disability determination in doubt, the appropriate disposition is to remand the case "for further development of the evidence."  Rosa, 168 F.3d at 83 (directing the ALJ to pursue greater completeness of the medical record, request an explanation from the treating physician regarding his diagnosis, and ask further opinions of the consulting physicians).

    C.    Retrospective Opinions

    "Retrospective diagnoses and opinions are those from a treating physician that relate to a time period in the past, including periods when the physician was not the treating source."  Lacava v. Astrue, No. 11-CV-7727 WHP SN, 2012 WL 6621731, at *13 (S.D.N.Y. Nov. 27, 2012), report and recommendation adopted, No. 11-CIV.-7727 WHP, 2012 WL 6621722 (S.D.N.Y. Dec. 19, 2012).  If a physician who treated the claimant before his or her date last insured provides a

retrospective opinion, the treating physician rule applies and the opinion may be entitled to controlling weight.  See Campbell v. Astrue, 596 F. Supp. 2d 446, 452 (D. Conn. 2009).  "The treating physician rule, however, does not technically apply when the physician was not the treating physician at all during the relevant time period."  Rogers, 895 F. Supp. 2d at 549 (citing Monette, 269 F. App'x at 112; Blanda, 2008 WL 2371419, at *13).  Accordingly, such an opinion is generally not entitled to controlling weight.  However, that "does not mean that the opinion should not be given some, or even significant weight."  Id. (emphasis added) (quoting Monette, 269 F. App'x at 112) (citing Dousewicz v. Harris, 646 F.2d 771, 774 (2d Cir. 1981)); see also Dousewicz, 646 F.2d at 774 ("While [the physician] did not treat the appellant during the relevant period . . . , his opinion is still entitled to significant weight."); Lacava, 2012 WL 6621731, at *13; Dailey v. Barnhart, 277 F. Supp. 2d 226, 233 n.14 (W.D.N.Y. 2003) ("Medical opinions given after the date that [the claimant's] insured status expired are taken into consideration if such opinions are relevant to [his] condition prior to that date."); Martinez, 242 F. Supp. 2d at 377 ("The retrospective opinion of a doctor who is currently treating a claimant is 'entitled to significant weight' even though the doctor did not treat the claimant during the relevant period." (citations omitted)); 3 Barbara Samuels, Social Security

Disability Claims: Practice and Procedure § 25:28 (2d ed. 2018);
cf. Campbell, 596 F. Supp. 2d at 452 (citations omitted) (noting
that a retrospective diagnosis by a subsequent treating physician
may still be entitled to controlling weight when it is
uncontradicted by other medical opinion evidence).

In some cases, the duty to develop the record requires the
ALJ to call upon a treating physician to obtain a retrospective
opinion regarding the claimant's condition during the period in
question.  Other courts in this Circuit have held that the ALJ
has a duty to obtain a retrospective opinion from a treating
provider regarding the claimant's condition prior to the date
last insured in a variety of circumstances, including (1) when
the record is incomplete or insufficient to make a disability
determination, e.g., Rogers, 895 F. Supp. 2d at 551; Austin v.
Astrue, No. 3:09-cv-765 (SRU), 2010 WL 7865079, at *9 (D. Conn.
Sept. 30, 2010); cf. Perez, 77 F.3d at 48; (2) when the treating
provider has provided an opinion but it is unclear whether the
opinion applies to the relevant period, see Camilo v. Comm'r of
the Soc. Sec. Admin., No. 11-Civ.-1345(DAB)(MHD), 2013 WL
5692435, at *23 (S.D.N.Y. Oct. 2, 2013); Martinez, 242 F. Supp.
2d at 378; (3) when the record indicates that a retrospective
opinion would be helpful, see Camilo, 2013 WL 5692435, at *23;
(4) when the record indicates that the allegedly disabling
condition began before the date last insured and the condition

likely continued afterward, see Martinez, 242 F. Supp. 2d at 378;
(5) when the record indicates the condition was constant as
opposed to significantly worsening after the date last insured,
see Brown v. Apfel, No. 97-CV-4404(JG), 1998 WL 767140, at *4
(E.D.N.Y. July 22, 1998); and (6) when the retrospective opinion
would be based on medically acceptable evidence, see Perez, 77
F.3d at 48; Agnese v. Chater, 934 F. Supp. 59, 62 (E.D.N.Y.
1996).  Many of these circumstances apply in plaintiff's case.
For example, the record is incomplete prior to plaintiff's date
last insured, it is not clear to what time period one of the
physicians' opinions pertains, and the record demonstrates some
ongoing back problems that may make a retrospective opinion
helpful.

    Accordingly, in order to fully develop the record in this
case, it is necessary to seek retrospective opinions.  On remand,
the ALJ may undertake to determine whether a physician's
statement was intended to be a retrospective diagnosis or whether
a physician is able to provide a retrospective opinion.  See,
e.g., Lacava, 2012 WL 6621731, at *13 (finding that the ALJ has
"the duty to obtain information from physicians who can provide
retrospective opinions about the claimant"); Rogers, 895 F. Supp.
2d at 550-52 (directing the ALJ to consider the possibility of
retrospective diagnosis by treating physicians); Martinez, 242 F.
Supp. 2d at 380 (remanding for further proceedings to "address

14

the issue of retrospective diagnoses"). As elaborated below, on remand, the ALJ should pursue both routes to fully develop the record.

D. The Opinions

The record includes opinions from five physicians,[8] three of whom were treating providers.[9] The two non-treating physicians are Dr. Firooz Golkar and Dr. Leonard Rubin. Dr. Golkar, a Social Security consultant, reviewed plaintiff's file in 2006 and concluded that plaintiff was capable of performing less than the full range of light work due to some non-exertional limitations.

---

[8] An additional treating provider, chiropractor Franco Menta, completed a Medical Source Statement on May 6, 2014. R. at 1175-78. Under a Social Security Ruling applicable at the time plaintiff filed his claim, the treating physician rule did not apply to chiropractors. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Accordingly, the ALJ's decision not to discuss Dr. Menta's statement was within her discretion.

[9] The record also includes a letter from a treating physician. Informal assessments from physicians can be interpreted as treating physician opinions. E.g., Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013); Wilson v. Colvin, 136 F. Supp. 3d 475, 480 (W.D.N.Y. 2015). In May 1990, S. Javed Shahid, M.D., examined plaintiff regarding back pain he suffered after a car accident in February 1990. R. at 709; see R. at 696. On November 26, 1993, Dr. Shahid wrote a letter supporting plaintiff's cancellation of his martial arts classes. R. at 695. The ALJ discussed this letter but chose not to recognize it as a treating physician opinion. R. at 26. The ALJ noted that the record does not indicate any ongoing treatment from Dr. Shahid between 1990 and 1993, the letter was written six years before the period at issue, and the letter pertained to recreational activity rather than ability to work. Accordingly, the ALJ gave the letter "due consideration but [did] not give it any significance as a treating physician opinion." R. at 26. I think the ALJ's analysis of the letter provides "good reasons" for not assigning the letter much weight.

R. at 654-55.  The ALJ gave Dr. Golkar's opinion "considerable weight," but since she found that plaintiff was capable of "light work without any restrictions," she did not credit Dr. Golkar's assessment regarding non-exertional limitations.  R. at 30.[10]

Dr. Rubin was the medical expert who testified at the final hearing in 2015.  R. at 173-200.  His testimony was based solely on a review of the medical record at the time.[11]  R. at 173-74. The ALJ found his testimony to be "consistent with the overall evidence of record" and gave it "significant weight."  R. at 23.

The three treating physicians who provided Medical Source Statements are Dr. John Boockvar, Dr. Robert Dawe, and Dr. Mahabir.  R. at 689-94, 702-04.  The ALJ discussed only Dr. Mahabir's opinion and gave it "minimal weight."  R. at 28. Accordingly, the only medical opinions to whom she assigned any real weight were those of non-treating physicians.

A court may find error when an ALJ does not credit treating physicians' opinions, especially when the ALJ "appears to have exclusively relied on [a non-treating physician's] testimony"

_____

[10] In determining plaintiff's RFC, the ALJ cited Dr. Golkar's assessment as well as another exhibit, "a slightly less restricted [RFC] drafted in 2010."  R. at 30.  It is not clear what the ALJ meant by this statement, as the citation was to a more restricted RFC drafted in 2009.
[11] Two exhibits were added to the record in March 2015, after Dr. Rubin testified.  R. at 1196-1209.  Exhibit 35F pertained to dates of service in 2008 and 2009; Exhibit 36F was from March 2015.  Therefore, Dr. Rubin had the opportunity to review the full record prior to plaintiff's date last insured.

over the opinions of treating physicians.  <u>Bradley v. Colvin</u>, 110

F. Supp. 3d 429, 444 (E.D.N.Y. 2015); <u>see</u> <u>Vargas v. Sullivan</u>, 898

F.2d 293, 295 (2d Cir. 1990) ("It is obvious that the A.L.J.

based his conclusion on the testimony of . . . his medical

adviser . . . . In thus elevating the opinion of the medical

adviser, who never had examined [the plaintiff], over that of . .

. her treating physician, the A.L.J. violated a general rule

adopted in all, or virtually all, of the circuits.").  I find

such error here, most importantly due to the ALJ's treatment of

Dr. Mahabir's opinion.

1.  <u>Dr. Mahabir</u>

Dr. Mahabir was plaintiff's primary care physician beginning

prior to his date last insured.  Plaintiff stated that he first

visited Dr. Mahabir in 2001, and the record includes medical

records from Dr. Mahabir dating to 2004.  R. at 466, 730.

Dr. Mahabir provided an opinion dated April 28, 2009, well

after plaintiff's date last insured.  However, the opinion did

not specify the time frame to which it applied.  If Dr. Mahabir

intended the opinion to describe plaintiff's condition before his

date last insured, it would affect the disability determination,

because it describes limitations inconsistent with the full range

of sedentary work under 20 C.F.R. § 404.1567(a).[12]  Specifically,

---

[12] "Sedentary work involves lifting no more than 10 pounds at a
time and occasionally lifting or carrying articles like docket
files, ledgers, and small tools.  Although a sedentary job is

Dr. Mahabir found the following significant exertional limitations: plaintiff was limited to occasionally lifting and/or carrying less than ten pounds, could stand or walk less than two hours in an eight-hour workday, could sit less than six hours in an eight-hour workday, had to periodically alternate sitting and standing, and was limited in pushing or pulling with his lower extremities. R. at 689-90. Dr. Mahabir also noted non-exertional postural and manipulative limitations. R. at 690.

The Guidelines direct a finding of "not disabled" for anyone plaintiff's age with his education level who can perform the full range of sedentary work, but other factors must be considered if the full range is unattainable. Id. pt. 404, subpt. P, app. 2, § 201.00(h)(3). Additionally, if plaintiff would need to periodically alternate sitting and standing, that condition could require the ALJ to consult with a vocational expert. SSR 83-12, 1983 WL 31253 (Jan. 1, 1983). Accordingly, if Dr. Mahabir's opinion is credited and applies to the period in question, the ALJ will need to reconsider plaintiff's RFC and consult a vocational expert.

The ALJ discussed Dr. Mahabir's opinion but assigned it minimal weight for the following reasons:

---

defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

> [Dr. Mahabir's opinion is] dated April 28, 2009, which is
> well after the claimant's date last insured.  Further, this
> document does not appear to indicate to what time period the
> assessment pertains . . . .  Dr. Mahabir's opinion is given
> minimal weight, as it is clearly not supported by his own
> treatment notes during the period at issue.  Dr. Mahabir's
> treatment notes indicate that the claimant sought sporadic
> treatment for various ailments and reported that his back
> pain was greatly improved after therapy.  In addition, it
> appears that Dr. Mahabir completed the form on the
> claimant's behalf more in the role of an advocate rather
> than in the role of an objective treating source.  It is
> further noted that the claimant's condition in April 2009 is
> not at issue.

R. at 28.  These reasons are insufficient to sustain a finding
that Dr. Mahabir's opinion should receive only minimal weight.

The date of Dr. Mahabir's opinion is surely relevant.
However, "[t]o discharge [her] duty to develop the record, the
ALJ should have sought clarification from [the treating
physician] as to whether his [later] impressions applied to the
period at issue" or, alternatively, "asked [the treating
physician] to provide a retrospective opinion" related to the
period at issue.  Wiebicke v. Astrue, No. 10-CIV.-3371(BSJ)(FM),
2012 WL 2861681, at *17 (S.D.N.Y. July 2, 2012).  If Dr.
Mahabir's opinion was intended to be retrospective, or if he is
able to provides a retrospective opinion on remand, the treating
physician rule will apply.  See Martinez, 242 F. Supp. 2d at 377
(citations omitted).

It is not entirely clear what the ALJ meant when she said
that Dr. Mahibir's opinion "is clearly not supported by his own

treatment notes during the period at issue."  However, it appears

that the ALJ was referring to the illegibility of the notes,

rather than the information they contain (or do not contain).

The ALJ repeatedly observed that Dr. Mahabir's treatment notes

are illegible, rendering the notes "of little value."  R. at 27;

see R. at 29 (stating that notes in February 2006 were "too

illegible to figure out what exactly was wrong with the claimant"

and that notes in August 2007 "are generally illegible").  I

agree the notes are illegible.[13]  That being so, however, Dr.

Mahabir's opinion cannot be discounted on the ground that it is

inconsistent with his own notes.  See Silva v. Colvin, No.

6:14-CV-06329 MAT, 2015 WL 5306005, at *5 (W.D.N.Y. Sept. 10,

2015) ("The Court is unclear how the ALJ could find that the

[doctor's] opinions are inconsistent with his own treatment notes

when the notes (and portions of the opinions) are illegible.").

The duty to develop the record can include a duty to seek

clarification regarding illegible medical notes.  "Where the

medical records are crucial to the plaintiff's claim,

illegibility of important evidentiary material has been held to

warrant a remand for clarification and supplementation."  Cutler

v. Weinberger, 516 F.2d 1282, 1285 (2d Cir. 1975) (remanding

---

[13] Additionally, there is an illegible handwritten note on Dr.
Mahabir's opinion addressing the question of what medical or
clinical findings support his conclusions.  It may reference an
MRI.  R. at 690.

based in part on the illegibility of "[m]any of the medical records"). This is anchored in the ALJ's "affirmative obligation to develop a complete and detailed record by reaching out to Plaintiff's treating source for additional evidence or clarification." Soto v. Comm'r of Soc. Sec., No. 17-CV-2377 (PKC), 2018 WL 3241313, at *2 (E.D.N.Y. July 2, 2018) (citing McClinton v. Colvin, No. 13-CV-8904 (CM)(MHD), 2015 WL 5157029, at *23 (S.D.N.Y. Sept. 2, 2015)); see also Minnifield v. Berryhill, No. 3:17-CV-1196(DFM), 2018 WL 4380979, at *7 (D. Conn. Sept. 14, 2018) (collecting cases). Such additional evidence may include transcription. Silva, 2015 WL 5306005, at *5; see also Johnson v. Comm'r of Soc. Sec., No. 16-CIV-1729(CS)(PED), 2017 WL 4155408, at *10 n.2 (S.D.N.Y. Sept. 18, 2017). On remand, the ALJ should develop the record by obtaining clarification regarding the contents of Dr. Mahabir's treatment notes. See Cutler, 516 F.2d at 1285; Minnifield, 2018 WL 4380979, at *7; Silva, 2015 WL 5306005, at *5.[14]

I have been unable to locate a reference in Dr. Mahabir's notes to the effect that plaintiff "reported that his back pain was greatly improved after therapy."[15] Nor did the ALJ explain

---

[14] The same applies to handwritten notes from another treating physician, Dr. Welch at Westchester Health Associates, which the ALJ described as "hard to decipher." R. at 27 (citing R. at 712-13, 1087-89).

[15] The ALJ may have been confused by a form completed by a physical therapist in July 2005, which listed Dr. Mahabir as plaintiff's physician, but was not completed by Dr. Mahabir.

the basis for her statement that Dr. Mahabir seemed to be acting more in the role of an advocate than an objective treating source.

Finally, elsewhere in the ALJ's decision, she incorrectly discounted the ongoing nature of Dr. Mahabir's treatment relationship with plaintiff during the relevant period.  The ALJ wrote that after August 2004, "[t]here is no indication that Dr. Mahabir treated the claimant again until May 2005," after his date last insured.  R. at 27.  However, the record shows that Dr. Mahabir treated plaintiff in December 2004 and was the attending physician during numerous appointments in January and February 2005 regarding a peripherally inserted central catheter ("PICC line").  R. at 736, 792-875.  This is important because the length of the treatment relationship and the frequency of examination is one of the factors an ALJ must consider if a treating physician's opinion is not given controlling weight. See 20 C.F.R. § 404.1527(c)(2), (c)(2)(i).

Accordingly, the ALJ did not provide "good reasons" for giving minimal weight to Dr. Mahabir's opinion.  Because Dr.

---

That form indicated that plaintiff "report[ed] being 90% better" after a few weeks of physical therapy.  R. at 717; see also R. at 615 (note from Nicholas Polifroni, M.D., on October 25, 2005 stating that plaintiff was "about 80% to almost 90% improved with physical therapy").  But see R. at 668 (note from Dr. Boockvar on January 19, 2006, that plaintiff had ongoing low back pain for which physical therapy had provided some relief, but which was persisting).

Mahabir's opinion could impact plaintiff's disability determination, a remand is required. On remand, the ALJ should determine whether Dr. Mahabir's opinion was meant to be retrospective and, if not, request a retrospective opinion from him; seek clarification regarding Dr. Mahabir's treatment notes; and reconsider the weight to assign his opinion in light of this ruling.

### 2. The Other Physician Opinions

Dr. Boockvar's opinion is dated July 29, 2008, and notes that the date he first treated the plaintiff, January 19, 2006, was the earliest date to which his description of plaintiff's limitations applied. Dr. Dawe's opinion is dated April 23, 2009, and notes that the earliest date to which his description of plaintiff's limitations applied is April 21, 2009. Additionally, it appears that his conclusions were based on imaging performed after the date last insured. R. at 701. Because Dr. Boockvar and Dr. Dawe were not treating physicians during the relevant period, the treating physician rule does not technically apply to them. Campbell, 596 F. Supp. 2d at 452.

Nevertheless, both physicians' opinions refer explicitly to plaintiff's diagnosis of spondylolisthesis. R. at 693, 703. That diagnosis predates the date last insured and, indeed, predates the period in question. R. at 697 (noting central disc herniation and spondylolisthesis in 1990). Accordingly, they may

have been able to provide retrospective opinions related to plaintiff's back problems.  As part of her duty to develop the record, the ALJ was under an obligation to determine whether Dr. Boockvar and Dr. Dawe could provide a retrospective opinion regarding plaintiff's limitations during the period in question. If so, their retrospective opinions may be entitled to significant weight.  Rogers, 895 F. Supp. 2d at 549.  On remand, Dr. Boockvar and Dr. Dawe should be contacted to determine whether they can provide retrospective opinions regarding plaintiff's limitations before his date last insured.

E. Medical Expert Testimony

Finally, the ALJ erred in giving substantial weight to the testimony of non-treating medical expert Dr. Rubin.  Remand is in order when the ALJ "bas[ed] [her] decision primarily on" a medical expert's testimony that was "conclusory, inherently contradictory[,] and based on careless factual errors."  Gonzalez v. Apfel, 113 F. Supp. 2d 580, 589 (S.D.N.Y. 2000).  While the ALJ does not appear to have based her decision only on Dr. Rubin's testimony, his was one of only two medical opinions accorded any real weight, neither of which were from treating physicians.  Therefore, her decision may have been based "primarily" on Dr. Rubin's testimony.  Id.

The problems with the medical expert's testimony described in Gonzalez parallel those in the present case.  The Gonzalez

24

expert ignored ample evidence of an arthritis diagnosis, made basic misstatements about the record, and stated that it was "just hard for [him] to say" whether plaintiff had arthritis. Id. at 585, 589 & n.14. Here, the expert did not discuss substantial records regarding the Lyme diagnosis, R. at 178, 181-82;[16] misstated potentially significant aspects of the record;[17] and admitted that he "sort of felt a little lost in this case" due to the number of exhibits, R. at 177. His testimony was also inconsistent in two ways. He initially testified that plaintiff met the criteria of a listed disability, but later testified that he could not find "specific data" in the record that would support a finding of disability. R. at 175, 186.[18] Second, he initially testified that plaintiff had an ongoing herniated disc from 1990 until the time of the hearing in 2015, but later implied that the herniated disc had resolved. R. at 175-76, 180, 187-88. In addition, Dr. Rubin's testimony appears to conflate

---

[16] The record shows a positive test for Lyme, R. at 725, and several treating providers noted that plaintiff was diagnosed with Lyme. E.g., R. at 713, 727, 875, 1180. The ALJ did not credit Dr. Rubin's doubts about the Lyme diagnosis and found that plaintiff had a history of Lyme disease. R. at 22.
[17] Dr. Rubin incorrectly indicated that the record lacked diagnoses for shingles and epididymitis. Compare R. at 193-96, 198-99 (Dr. Rubin's testimony), with R. at 737, 892-96 (shingles diagnosis), and 962-63, 987-90, 1007 (recurring epididymitis in at least December 2006, June 2007, and November 2008).
[18] Rather than being inconsistent, these aspects of Dr. Rubin's testimony may well have arisen out of his lack of understanding regarding the standards employed in a disability determination. Either way, the shifting nature of his testimony limits its utility.

the standards at step three and step four of the disability evaluation. In response to a question regarding the RFC, which is relevant at step four, he referred to the strict criteria for Listing 1.04, Disorders of the Spine, which is relevant at step three. R. at 23, 175-76, 180; see 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A).

For all of these reasons, the ALJ erred in giving the expert's testimony significant weight. On remand, the ALJ should reconsider the weight to assign Dr. Rubin's opinion.[19]

## IV. Remand

"[B]ecause the ALJ did not fully develop the record" with regard to the opinions of plaintiff's treating physicians, especially Dr. Mahabir, and because the ALJ did not provide "good reasons" for discounting Dr. Mahabir's opinion, "the Court cannot properly determine if disability benefits are warranted, making further evidentiary proceedings before the ALJ appropriate."

---

[19] On the remand, the ALJ may wish to revisit certain aspects of Dr. Rubin's testimony. Dr. Rubin did not say "that there were no objective findings to support any of the [RFC] forms contained in the record." R. at 23 (emphasis added). Rather, his testimony was limited to a discussion of the RFC opinions provided by Dr. Dawe and Dr. Menta. R. at 180. He did not directly testify regarding the other RFC assessments in the record. Moreover, based on my review of the transcript, Dr. Rubin did not "point[] out that the period between these [groin infection and shingles] episodes was at least a year." R. at 25. Rather, the ALJ made that observation during an exchange with plaintiff's attorney. R. at 197. In this connection, it bears noting that some incidents of epididymitis (a groin infection, R. at 196) took place within a year. See R. at 960-63, 987 (showing epididymitis incidents in December 2006 and June 2007).

Rogers, 895 F. Supp. 2d at 554. On remand, the ALJ should more fully develop the record by seeking clarifying information from plaintiff's treating physicians, including: (1) determining the time frame to which Dr. Mahabir's opinion applies; (2) asking Dr. Mahabir, Dr. Boockvar, and Dr. Dawe to provide retrospective opinions if possible; and (3) clarifying the illegible notes from Dr. Mahabir and Dr. Welch. Additionally, the ALJ should reconsider and clarify the weight she assigned to the opinion of Dr. Rubin in light of the issues noted above and any new information obtained from plaintiff's treating physicians. Finally, the ALJ should redetermine plaintiff's RFC and credibility based on this additional information and analysis. See Mortise v. Astrue, 713 F. Supp. 2d 111, 124-25 (N.D.N.Y. 2010) ("The ALJ's proper evaluation of [the treating physicians'] opinions will necessarily impact the ALJ's credibility analysis."). The ALJ should then reconsider the disability determination at step five, including obtaining vocational expert testimony if necessary.

V. Conclusion

Plaintiff's motion to reverse the decision of the Commissioner (ECF No. 12) is granted in part, and the Commissioner's motion to affirm the decision of the Commissioner (ECF No. 15) is denied. Plaintiff's motion is granted under 42 U.S.C. § 405(g) to the extent that the Commissioner's decision is

reversed and this case is remanded back to the ALJ for further proceedings in accordance with this ruling.

So ordered this 30th day of September 2019.

_____/s/ RNC_____
Robert N. Chatigny
United States District Judge